**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

EDDIE L. FOREMAN, JR.,           )
                                 )
        **Plaintiff,**            )
                                 )
v.                               )     Civil Action No.  3:05-CV-1134-WKW
                                 )
SHERIFF JAY JONES, et.al.,       )
                                 )
        **Defendant.**            )

<u>**DEFENDANTS' SPECIAL REPORT**</u>

COME NOW Sheriff Jay Jones, Major Cary Torbert, Jr., and Lieutenant Ray Roberson, Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On December 12, 2005, Plaintiff Eddie L. Foreman, Jr., filed his Complaint in the United States District Court for the Middle District of Alabama.  On December 20, 2005, this Court ordered Defendants to file a Special Report and Answer within forty days of the date of the order.  On January 20, 2005, this Court entered an Order dismissing with prejudice Plaintiff's excessive bond, false imprisonment, and slander claims and dismissing the Chief of Police for the Opelika Police Department, Detective Pruitt and inmate Darius Wood as defendants in this cause of action.

Plaintiff was arrested on May 30, 2004, on the charge of Robbery in the Third Degree. (Exhibit A, Inmate File of Eddie L. Foreman, Jr., "Inmate File," Booking Sheet dated May 30, 2004.)  He was booked into the Lee County Detention Facility that same day.  (Ex. A, Inmate File, Booking Sheet dated May 30, 2004.)  The Plaintiff was a pretrial detainee at all times relevant to the allegations made the basis of the Plaintiff's Complaint.  (Exhibit B, Affidavit of

Major Cary Torbert, Jr.[1], "Torbert aff.," ¶ 5.)

## PLAINTIFF'S ALLEGATIONS

The only remaining allegations, per this Court's Order dated January 20, 2005, are "the failure to protect and denial of religion claims." Plaintiff requests punitive damages and damages for mental duress and anguish in the sum of $4,000,000 per individual. (Plaintiff's Complaint, p. 4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit C, Affidavit of Sheriff Jay Jones[2], "Jones aff.," ¶ 4; Ex. B, Torbert aff., ¶ 4; Exhibit D, Affidavit of Lieutenant Ray Roberson[3], "Roberson aff.," ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility. As Sheriff of Lee County, Sheriff Jones is responsible for promulgating the policies governing the Lee County Detention Facility. (Ex. C, Jones aff. ¶ 5.)

---

[1] Cary Torbert, Jr. serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major. He has worked with the Lee County Sheriff's Department for over 32 years.
[2] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.
[3] Ray Roberson is employed with the Lee County Sheriff's Department and serves as Assistant Jail Administrator at the Lee County Detention Facility. He has worked in the Lee County Detention Facility for twenty-three years and has obtained the rank of lieutenant.

Sheriff Jones has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint. (Ex. C, Jones aff. ¶ 3.)

### A. DENIAL OF RELIGION

It is the policy of the Lee County Sheriff's Department that persons incarcerated in the Lee County Detention Center are allowed the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs. (Ex. C, Jones aff. ¶ 6; Ex. B, Torbert aff. ¶ 6; Ex. D, Roberson aff. ¶ 5.) Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the Chief Deputy Sheriff before being admitted to the Detention Center. (Ex. C, Jones aff. ¶ 7; Ex. B, Torbert aff. ¶ 7; Ex. D, Roberson aff. ¶ 6.) All religious visitors are subject to search and must comply with all visitor regulations. (Ex. C, Jones aff. ¶ 8; Ex. B, Torbert aff. ¶ 8; Ex. D, Roberson aff. ¶ 7.) Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate. (Ex. C, Jones aff. ¶ 9; Ex. B, Torbert aff. ¶ 9; Ex. D, Roberson aff. ¶ 8.) Religious volunteers may also make use of the multi-purpose area in order to hold religious services. (Ex. C, Jones aff. ¶ 10; Ex. B, Torbert aff. ¶ 10; Ex. D, Roberson aff. ¶ 9.) Inmates in administrative segregation may receive ministry individually only. (Ex. C, Jones aff. ¶ 11; Ex. B, Torbert aff. ¶ 11; Ex. D, Roberson aff. ¶ 10.) Detention Center officials may end or limit a ministry session or limit the number of religious volunteers if necessary. (Ex. C, Jones aff. ¶ 12; Ex. B, Torbert aff. ¶ 12; Ex. D, Roberson aff. ¶ 11.)

Religious services may be scheduled for a set time each week. Other services may be scheduled for other times with the Chief Deputy Sheriff's approval. (Ex. C, Jones aff. ¶ 13; Ex. B, Torbert aff. ¶ 13; Ex. D, Roberson aff. ¶ 12.) Normally, there are religious services held on Wednesdays and Sundays. Inmates have the opportunity to request an individual religious visit for

any Wednesday by filling out a request form and turning it in to any officer.  (Ex. B, Torbert aff., ¶ 13; Ex. D, Roberson aff. ¶ 12.)  Lieutenant Roberson does not ever recall the Plaintiff requesting to see Pastor James Benson, nor does he recall denying any such request.  Had the Plaintiff submitted a request for an individual religious visit, Lieutenant Roberson would have answered the request and placed a copy of the request form in the Plaintiff's inmate file.  (Ex. B, Torbert aff., ¶ 14; Ex. D, Roberson aff. ¶ 12.)  However, upon review of the Plaintiff's inmate file, no such form is present. (Ex. B, Torbert aff., ¶ 14; Exhibit G, Inmate File[4].)

No inmate who, in the opinion of the Sheriff, Chief Deputy Sheriff, or Shift Supervisor, presents a security risk may attend religious services.  Such inmates will be allowed free access to religious counseling or conferences on an individual basis. (Ex. C, Jones aff. ¶ 14; Ex. B, Torbert aff. ¶ 15; Ex. D, Roberson aff. ¶ 13.)  No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion.  (Ex. C, Jones aff. ¶ 15; Ex. B, Torbert aff. ¶ 16; Ex. D, Roberson aff. ¶ 14.)  Any member of the jail staff who engaged in such discrimination would be in violation of Sheriff Jones' policies.  (Ex. C, Jones aff. ¶ 15.)  The Lee County Sheriff's Department does not provide any religious materials of any nature to inmates at the Sheriff's Department's expense.  (Ex. C, Jones aff. ¶ 16; Ex. B, Torbert aff. ¶ 17; Ex. D, Roberson aff. ¶ 15.)

**B.    FAILURE TO PROTECT**

It is the policy of the Lee County Sheriff's Department that no person is incarcerated in a situation within the Lee County Detention Center where his life or health may be threatened by another inmate when, by making the situation known to members of the Detention Center staff, he can be incarcerated elsewhere.  (Ex. C, Jones aff. ¶ 17; Ex. B, Torbert aff. ¶ 18; Ex. D,

---

[4] A copy of the remainder of the Plaintiff's Inmate File, not previously referenced as a separate exhibit, is attached hereto as Exhibit G.

Roberson aff. ¶ 16.)  All persons being booked into the Lee County Detention Center are given the opportunity to complete an Enemies List.  (Ex. C, Jones aff. ¶ 18; Ex. B, Torbert aff. ¶ 19; Ex. D, Roberson aff. ¶ 17.)  The Booking Officer gives the arrestee an opportunity to make known in writing any person within the Detention Center whom he fears or has reason to believe is a threat to him in any way.  (Ex. C, Jones aff. ¶ 19; Ex. B, Torbert aff. ¶ 20; Ex. D, Roberson aff. ¶ 18.)  If the inmate states that there is an inmate or inmates who would do him harm, Detention Center personnel lists the inmate or inmates on the Enemies List form stating the reason the new inmate feels that he is in danger.  (Ex. C, Jones aff. ¶ 20; Ex. B, Torbert aff. ¶ 21; Ex. D, Roberson aff. ¶ 19.)  Whenever such a situation occurs, the Shift Supervisor is notified, and the new inmate is housed away from those who he fears will cause him harm.  (Ex. C, Jones aff. ¶ 21; Ex. B, Torbert aff. ¶ 22; Ex. D, Roberson aff. ¶ 20.)  In addition, at any time, an inmate may activate the buzzer in the cell or otherwise alert any officer and orally request to be moved to a different cell if that inmate feels that he is in danger of an attack.  All Detention Center staff understand that an inmate's oral or written request to be moved where the inmate feels threatened is to be taken seriously.  If such a request is made, that inmate is moved *immediately*. (Ex. C, Jones aff. ¶ 22.)  At the time the Plaintiff was booked into the Lee County Detention Facility, the Booking Officer was required to note on the booking sheet whether or not a new inmate stated that he has knowledge of any other inmate who would cause him harm.  (Ex. C, Jones aff. ¶ 23; Ex. B, Torbert aff. ¶ 23; Ex. D, Roberson aff. ¶ 21.)  Failure to give an inmate an opportunity to complete an enemies list or having an inmate with a known enemy would violate the policies Sheriff Jones has established for the jail.  (Ex. C, Jones aff. ¶ 24.)  The Plaintiff indicated that he had no known enemies upon his admission to the Lee County Detention Facility, six days prior to the altercation.  (Ex. A, Inmate File, Booking Sheet dated May 30,

2004.)

Derode Woods, the inmate of which the Plaintiff complains, had been convicted of Felony DUI, which is not considered a violent crime. (Ex. B, Torbert aff. ¶ 24.) The date that the Plaintiff was involved in a fight with Derode Woods was June 5, 2004. June 5, 2004, fell on a Saturday, and therefore neither Major Torbert nor Lieutenant Roberson was on duty that day. Accordingly, the knowledge that they have concerning this incident is gleaned from the reports attached to the affidavits of Sergeant Rodney D. Tabb and Corporal Joseph Matterson Cowhick. (Ex. B, Torbert aff. ¶ 25; Ex. D, Roberson aff. ¶ 22.)

Prior to the altercation on June 5, 2004, the Plaintiff had never asked to be separated from Derode Woods. Had the Plaintiff requested to be separated from Derode Woods, the request would have been granted in accordance with the policy of the Lee County Detention Center. (Ex. B, Torbert aff. ¶ 26; Ex. D, Roberson aff. ¶ 23.) The inmates involved in the altercation were separated immediately after the incident and remained separated until each was either released or transferred to the Department of Corrections. (Ex. B, Torbert aff. ¶ 27.)

According to the testimony and reports from the officers who were on duty on June 5, 2004, the following is a summary of the incident wherein the Plaintiff and Derode Woods got in an altercation:

1.     On June 5, 2004, at approximately 4:30 p.m., the buzzer was activated in Cell F-4. Corporal Cowhick was informed that a fight had broken out in cell F-4 between inmates Marquez Vaughn, Derode Woods, Antonio Edwards, and the Plaintiff. Inmate Derode Woods was injured, and therefore he was taken to the nurse and then brought to booking for observation. (Exhibit E, Affidavit of Joseph Matterson Cowhick[5], "Cowhick aff.," ¶ 5; Exhibit 1 to the

---

[5] Corporal Cowhick has been employed as a corrections officer with the Lee County Sheriff's Department for 6 years and has obtained the rank of Corporal. (Ex. E, Cowhick aff. ¶ 2.)

Affidavit of Joseph Matterson Cowhick, Inmate File of Eddie Foreman, "Inmate File," Lee County Sheriff's Department Special Report dated June 5, 2004.)   At that time, Corporal Cowhick did not see the Plaintiff because the Plaintiff was in the shower.  (Ex. E, Cowhick aff. ¶ 6.)  However, about thirty minutes later, the buzzer in F-4 went off again.   When Corporal Cowhick arrived at F-4, he saw the Plaintiff on the floor with a deep cut above his right eye. Corporal Cowhick escorted the Plaintiff to see Nurse Stewart, the Jail Nurse.  Nurse Stewart recommended that the Plaintiff be taken to the hospital for stitches.  Therefore, Corporal Wiltsie transported Plaintiff to the hospital.  (Ex. E, Cowhick aff. ¶ 7; Ex. 1 to Cowhick aff.)  Corporal Cowhick interviewed the Plaintiff while he was at the Nurse's Station.   The Plaintiff told Corporal Cowhick and Nurse Stewart that he fell out of the shower and hit his head.  He said that he then got back up in the shower and put some grease on his hair.  Per the Plaintiff, after that he went and sat down at the table and began feeling light-headed.  He then fell to the floor feeling faint.  The Plaintiff stated that it was at that point that the officers came in and that Corporal Cowhick took him to the Nurse's Station.  (Ex. E, Cowhick aff. ¶ 8; Ex. 1 to Cowhick aff.; Exhibit 2 to Cowhick aff., Inmate File, Lee County Sheriff's Department Jail Division Inmate Interview Record.)

At approximately 9:00 p.m. on June 5, 2004, Sergeant Rodney D. Tabb took statements from inmates in Cell F-4 regarding the fight that had occurred in that cell.  (Exhibit F, Affidavit of Rodney D. Tabb[6], "Tabb aff.," ¶ 5; Exhibit 1 to the Affidavit of Rodney D. Tabb, Inmate File of Eddie L. Foreman, "Inmate File," Lee County Sheriff's Department Special Report dated June 5, 2004.)  The first person Sergeant Tabb interviewed was Derode Woods.  Woods stated that he struck the Plaintiff with a closed fist causing the Plaintiff's injury.   However, Sergeant Tabb

---

[6] Rodney D. Tabb has been employed as a corrections officer with the Lee County Sheriff's Department for over fourteen years and has obtained the rank of Sergeant.

interviewed five other inmates, all of whom stated that Woods never hit Foreman.  (Ex. F, Tabb aff. ¶ 6; Ex. 1 to Tabb aff.)  Cecil Pearson, an inmate who was housed in F-4, informed Sergeant Tabb that Derode Woods and the Plaintiff got into a physical altercation wherein Plaintiff's head was hit against the vestibule bars causing a laceration to the Plaintiff's forehead.  Pearson informed Sergeant Tabb that the Plaintiff hit Woods with food trays, beat Woods' head into the floor, and bit Woods several times.  Pearson told Sergeant Tabb that Marquez Vaughn struck Woods as well.  (Ex. F, Tabb aff. ¶ 7; Ex. 1 to Tabb aff.)  Cecil Pearson also informed Sergeant Tabb that, while the Plaintiff had Woods pinned to the floor, he stuck his fingers into Woods' anus and stated, "I'm gonna f**k you in you're a** motherf**ker."  (Ex. F, Tabb aff. ¶ 8; Ex. 1 to Tabb aff.)

The second inmate that Sergeant Tabb interviewed, Jamerio Sutton, also informed him that the Plaintiff penetrated Woods' anus with his finger(s) and that the Plaintiff stated, "If you was in prison, I'd f**k you right now."  (Ex. F, Tabb aff. ¶ 9; Ex. 1 to Tabb aff.)  The next inmate that Sergeant Tabb interviewed, Walter Smith, also stated that the Plaintiff stuck his hand down Woods' pants and stated "This is what they'd do to you in prison."  (Ex. F, Tabb aff. ¶ 10; Ex. 1 to Tabb aff.)  Sergeant Tabb interviewed two other inmates whose statements were consistent with the statements of the other inmates except they did not personally witness the alleged sodomy.  (Ex. F, Tabb aff. ¶ 11; Ex. 1 to Tabb aff.)

Because of the findings of the investigation, Sergeant Tabb ordered the Plaintiff to be placed in administrative lockdown pending a disciplinary hearing.  (Ex. F, Tabb aff. ¶ 12; Ex. 1 to Tabb aff.)  On June 15, 2004, Sergeant Tabb served the Plaintiff with a Notification of Charges stemming from the fight which occurred on June 5, 2004.  (Ex. F, Tabb aff. ¶ 13; Exhibit 2 to Tabb aff., Inmate File, Lee County Sheriff's Department Notification of Charges

dated June 14, 2004.)  A disciplinary hearing was held on June 16, 2004, wherein the Plaintiff pled guilty to a violation of the Lee County Detention Facility's prohibition against fighting with another inmate.   The disciplinary committee recommended that the Plaintiff be placed on disciplinary lockdown with the loss of privileges for five days.  (Ex. F, Tabb aff. ¶ 14; Exhibit 3 to Tabb aff., Inmate File, Lee County Sheriff's Department Synopsis of Major/Minor Disciplinary Hearing; Exhibit 4 to Tabb aff., Inmate File, Lee County Detention Center Disciplinary Report dated June 17, 2004.)

The Defendants have complied with all policies and procedures of the Lee County Detention Facility.  The Defendants are not aware of nor have they authorized or allowed any deviation from said policies and procedures.  (Ex. B, Torbert aff. ¶ 29; Ex. C, Jones aff. ¶ 26; Ex. D, Roberson aff. ¶ 25.)

## C.    GRIEVANCE PROCEDURES

Internal grievance procedures at the Lee County Detention Facility are available to all inmates.  It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon.  Upon request, the inmates are given an Inmate Grievance Form to complete and return to a Lee County Detention Facility staff member for any grievances they may have.   At no time, however, did the Plaintiff file any grievances concerning any of the claims made in his Complaint.  Had such a grievance been filed, it would have been acted upon accordingly (that is, whether an investigation was needed or simply a response made to the complaints).  (Ex. C, Jones aff. ¶ 25; Ex. B, Torbert aff. ¶ 28; Ex. D, Roberson aff. ¶ 24.)  A copy of all grievances are filed in the inmate's file.  However, there is no such grievance in the Plaintiff's inmate file.  Further, no written request form was filed by the Plaintiff concerning the altercation with Derode Woods or the religion issue.  Had the Plaintiff made

a request concerning any of these matters, there also would have been a response made to such complaints on the written request form, and a copy would have been placed in the Plaintiff's inmate file. However, no such request can be found in the Plaintiff's inmate file. (Ex. B, Torbert aff. ¶ 28; Ex. G, Inmate File.) It would be a violation of jail policy to refuse to provide an inmate with a grievance form or ignore a filed grievance. (Ex. C, Jones aff. ¶ 25.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their

10

official capacities should therefore be dismissed because they are not "persons" under § 1983, and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Despite the availability of a grievance procedure at the Lee County Detention Facility, Plaintiff did not file a grievance with the Lee County Detention Facility.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998)

(affirming dismissal of prison action due to failure to exhaust administrative remedies).

> **2.     Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  In the Plaintiff's Complaint, he requests monetary damages for "mental duress, and anguish" but does not make a claim for damages for physical injury.  (Plaintiff's Complaint, p. 4.)  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.     Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and Detention Center officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

12

The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the

13

unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

        **1.**      **Defendants are entitled to qualified immunity on Plaintiff's denial of religion claims.**

"Prisoners must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." Hudson v. Palmer, 468 U.S. 517, 523 (U.S. 1984) (other citations omitted). The Lee County Detention Facility's policy regarding religious activities of inmates uses the least restrictive means in furthering a legitimate security and safety interest while allowing inmates reasonable opportunities to practice their religious freedom. See Brunskill v. Boyd, 141 Fed. Appx. 771, 774-776 (11th Cir. 2005)[7]. In the instant case Plaintiff had access to twice weekly religious services. Clearly, Plaintiff was provided with more than reasonable opportunities to exercise his religious freedom. See Stovall v. Bennett, 471 F. Supp. 1286, 1289 (S.D. Ala. 1979) (The Jail's obtaining weekly services by a minister was sufficient to meet constitutional standards). Furthermore, the evidence shows that, although the Plaintiff had the opportunity to request an individual religious visit, he did not file any such request. See Stovall, 471 F. Supp. at 1290 (holding that the prison chaplain had no duty to begin offering a certain type of religious activity until requested). Additionally, Plaintiff does not allege that inmates of a different religion than the religion he practices were treated more favorably than he. Because the Defendants in this case have provided the Plaintiff reasonable opportunities to practice his religion, they have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct

---

[7] Per U. S. Ct. of App. 11th Cir. Rule 36-2, a copy of this opinion is attached hereto as Exhibit H.

was unlawful. Therefore, Defendants are entitled to qualified immunity on the Plaintiff's denial of religion claim.

### 2. Defendants are entitled to qualified immunity on Plaintiff's failure to protect claim.

"[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, (U.S. 1994). A jail officer only violates the Eighth Amendment when two conditions are met: (1) the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 834 and 837. Deliberate indifference is roughly equivalent to recklessness: "acting or failing to act with deliberate indifference to a substantial risk of serious harm . . . is the equivalent of recklessly disregarding that risk." <u>Id.</u> at 836.

Where the inmate had not requested protection from the other inmate involved and where the officer had no knowledge of a threat prior to the injury, a plaintiff's failure to protect claim must fail. <u>Carter v. Galloway</u>, 352 F.3d 1346, 1350-1351 (11th Cir. 2003). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 838 (U.S. 1994).

In the instant case, Plaintiff has not shown that he was faced with substantial risk of serious harm, nor can he show that the Defendants were aware of any such risk. The evidence shows that the Plaintiff was at least an equal aggressor in the alleged altercation. Furthermore, the Plaintiff pled guilty to a violation of the Lee County Detention Center prohibition against fighting with another inmate. Several inmates even gave statements that the Plaintiff even

15

sexually assaulted Derode Woods. Additionally, the Plaintiff has not alleged any facts showing that the Defendants had knowledge of any alleged risk. The Plaintiff had not requested protection from the other inmate involved, and the Defendants had no knowledge of a threat prior to the injury. If the Defendants knew of any risk of harm, they would have separated the Plaintiff and Woods immediately. After the fight, the Plaintiff and Woods were separated for the remainder of their incarceration at the Lee County Detention Center. In his Complaint, the Plaintiff does not even allege that the fight was the fault of the Defendants. Because Plaintiff has not shown that the Defendants knew about and were deliberately indifferent to a substantial risk of serious harm, his claim for failure to protect must fail.

The evidence clearly shows that the Defendants have not violated the Plaintiff's constitutional rights. Even assuming, *arguendo*, that a constitutional violation has occurred, the Defendants have done nothing to cross any bright line of clearly established constitutional law. Therefore, Defendants are entitled to qualified immunity on Plaintiff's claims.

**D.    Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

**1.    All Plaintiff's claims against Sheriff Jones and Major Torbert must fail because they had no personal involvement in the alleged constitutional violation.**

The Plaintiff has failed to allege that Sheriff Jones and Major Torbert were in any way

personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that Sheriff Jones and Major Torbert personally participated in his claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights. As such, all Plaintiff's claims are due to be dismissed against Sheriff Jones and Major Torbert.

> 2.    **Plaintiff's failure to protect claims against Lieutenant Roberson must fail because he had no personal involvement in the alleged constitutional violation.**

The Plaintiff has failed to allege that Lieutenant Roberson was in any way personally involved in any alleged violation of Plaintiff's constitutional rights with regard to his failure to protect claim. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that Lieutenant Roberson personally participated in this claim, nor does the Plaintiff allege specifically how Lieutenant Roberson violated his constitutional rights in regard to this claim. As such, Plaintiff's failure to protect claim is due to be dismissed against Lieutenant Roberson.

> 3.    **To the extent that any claims against the Defendants are based on the theory of *respondeat superior*, such claims must fail.**

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

### F.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[8]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### CONCLUSION

Defendants deny each and every allegation made by Plaintiff Eddie L. Foreman, Jr., in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[8] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a

Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 30th day of January, 2006.

> **s/Amanda Kay Morgan**
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of January, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Eddie L. Foreman, Jr.
> Tallapoosa County Jail
> 316 Industrial Park Dr.
> Dadeville, AL 36853

> **s/Amanda Kay Morgan**
> OF COUNSEL